JUDGE ROBINSON

08 CIV 6336

FILE COPY

RECEIVED
JUL 15 2008
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>EMMA B. MASSET,<br><br>Defendant. | ECF Case<br><br>No. 08 Civ. ____<br><br>**COMPLAINT** |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

### NATURE OF ACTION

1. This is a civil action brought under Sections 107(a) and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(g)(2), regarding the Westwood Chemical Company Superfund Site ("Site") in the City of Middletown, Town of Wallkill, County of Orange, New York. Plaintiff, the United States, seeks payment from Defendant Emma B. Masset ("Masset" or "Defendant") of unreimbursed costs incurred by the United States for response actions in connection with the Site. The United States also seeks a declaratory judgment that Defendant is liable for future response costs that may be incurred by the United States in connection with the Site.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and the parties pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331, 1345.

3. Venue is proper in this judicial district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b)-(c), because the claims arose, and the threatened or actual releases of hazardous substances occurred, in this district.

## DEFENDANT

4. Defendant Emma B. Masset is a resident of the State of New Jersey, residing at 242 Clove Road in the Town of Montague, County of Sussex.

5. Defendant is a former operator of the Site, which consists of a two adjacent parcels of real property consisting of approximately nine acres, and a building containing various offices, storage structures, and miscellaneous and industrial work spaces, located on Tower Road in Middletown, New York, in Orange County. In addition, the Site contained equipment including, but not limited to: reactor farms (consisting of tanks, pipes and dryers), bulk storage tanks, plastic containers holding 1,000 gallons of liquids called "totes," and fiber drums.

## GENERAL ALLEGATIONS

6. Westwood Chemical Corp. ("Westwood"), is a New York corporation organized in 1973 under the name Comet Chemical Corporation.

7. From the time of Westwood's incorporation in 1973 until the times of their respective deaths, Ernst Masset and Lester Koch owned and operated the company. Mr. Masset died in April 1986, and Mr. Koch died in 1999. Ernst Masset was married to Defendant Masset.

8.  Defendant Masset became President of Westwood in 1998, and from that time until Westwood's cessation of operations and abandonment of the Site, was an operator of the company, when "hazardous substances" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including, but not limited to hydrochloric acid, sulfuric acid, mercury, lead, chromium, copper, zinc, silver, selenium and arsenic, were disposed of at the Site.

9.  Westwood manufactured chemicals used in antiperspirants and substances used by municipal water suppliers at the Site.

10. Westwood generated significant amounts of waste water in its operations. By 2004, Westwood had lost the majority of its business from a principal customer, and was incurring high waste water disposal costs due to its inability to continue to discharge its waste water directly to the Town of Wallkill's (the "Town's") storm and sanitary sewer systems. Masset managed, directed and conducted operations at the Site that were specifically related to pollution, including operations relating to the leakage and the disposal of hazardous waste, and decisions concerning compliance with environmental regulations.

11. In October 2004, Westwood ceased its production at the facility.

12. In January 2005, Defendant Masset directed the company to abandon the Site.

13. When Westwood abandoned the Site, production chemicals, finished product, and waste materials were left at the Site, including hazardous substances. Containerized wastes were stored in both outdoor and indoor spaces that lacked heat, because utilities to the Site had been terminated. These containerized wastes were subjected to freezing temperatures and the potential for rupture of containers and the release of hazardous substances. In addition, after the

abandonment of the Site, the Site was left unsecured and open to potential trespassers and vandals.

14.   In her role as President of Westwood, Defendant was an operator at the Site from approximately 1998 to January 2005, during which time hazardous substances were disposed of at the Site.

## RESPONSE ACTIONS

15.   On February 10, 2005, the Town of Wallkill conducted an inspection at the Site. Upon noting several storage tanks and numerous containers with labels indicating corrosive contents, laboratory rooms with potentially shock-sensitive material, and the absence of utilities servicing the building, the Code Enforcement Officer for the Town notified the New York State Department of Environmental Conservation ("NYSDEC").  After securing the Site and taking other emergency measures relating to the property, on February 22, 2005, NYSDEC requested that EPA conduct a time-critical response action under CERCLA.

16.   By verbal authorization on March 2, 2005, EPA provided interim funding to commence a CERCLA removal response action at the site.  EPA determined that hazardous substances at the Site had been released or threatened to be released into the environment, and that conditions at the Site presented an imminent and substantial endangerment to public health, welfare, or the environment.  EPA commenced providing security at the Site as of March 3, 2005, and on March 8, 2005, mobilized to the Site and commenced stabilization and cleanup activities.  The conditions at the Site met the criteria for a CERCLA removal action as described in the National Contingency Plan, 40 C.F.R. § 300.415(b).

17. In performing removal activities, EPA provided, among other things: 24-hour security for the Site; stabilized the Site by restaging wastes to safe locations; addressed numerous leaks or spills at the Site by transferring materials from leaking containers into secure containers for disposal; sampled liquid and solid wastes and investigated conditions at the Site; segregated, staged, and shipped for recycling or reuse certain waste materials; and properly disposed of hazardous substances from the Site.

18. On or about March 1, 2006, EPA completed its on-Site CERCLA removal activities. The United States has incurred at least $3,084,485 in response costs through February 29, 2008, at the Site.

19. Westwood was placed in bankruptcy by an involuntary petition filed by creditors on January 28, 2005, under Chapter 7 of the Bankruptcy Code, which was superseded by a voluntary petition filed on February 11, 2005. The cases were consolidated by Order dated April 11, 2005. On or about November 22, 2006, the Westwood Site, including all real property, machinery, and equipment was sold for a cash payment of $3 million. On March 21, 2007, the Bankruptcy Court approved a settlement pursuant to which the Trustee, on behalf of Westwood, paid $1,257,930 to the United States for a portion of the United States' past response costs.

20. In October, 2007, Rocco Giovanniello, a former officer of Westwood, entered into an administrative settlement with EPA pursuant to Section 122(h) of CERCLA, 42 U.S.C. § 9622(h), and agreed to pay $25,000 to the United States for a portion of the United States' past response costs.

21. Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

22. Defendant operated the Site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), from 1998 to January 2005, when there was "disposal" of hazardous substances at the Site within the meaning of Sections 101(20), 101(29) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9601(20), 9601(29), 9607(a)(2).

23. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

24. There have been "releases" or "threatened releases" of "hazardous substances" within the meaning of Sections 101(14) and (22), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14) and (22), and 9607(a), into the environment at the Site. These substances include, without limitation, hydrochloric acid, sulfuric acid, mercury, lead, chromium, copper, zinc, silver, selenium and arsenic.

25. On or about July 11, 2007, EPA made a written demand on Defendant for payment of $1,736,061 of unreimbursed response costs.

26. The amount of unreimbursed response costs that were incurred by the United States in connection with the Site through February 29, 2008, are at least $1,811,555 plus interest.

## CLAIM FOR RELIEF

27. Paragraphs 1-26, are realleged and incorporated herein by reference.

28. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person,

from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--

(A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan . . . .

The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned.

29.     The release or threatened release of a hazardous substance at the Site has caused the United States to incur "response" costs, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in connection with the Site. The United States may continue to incur response costs in connection with the Site in the future.

30.     The costs of the response actions taken and to be taken by the United States in connection with the Site are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

31. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendant is liable to the United States for the response costs incurred and to be incurred by the United States in connection with the Site.

32. The United States is entitled to a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that Defendant is liable to the United States under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for any future response costs that may be incurred by the United States in connection with the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States of America respectfully requests that this Court:

1. Order Defendant to reimburse the United States for all unreimbursed response costs incurred and to be incurred by the United States in connection with the Westwood Chemical Company Superfund Site, plus interest;

2. Enter a declaratory judgment that Defendant is liable for all future response costs that may be incurred by the United States in connection with the Site not inconsistent with the NCP, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2);

4. Award the United States its costs of this action; and

5. Grant such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Date: 7/14/08

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York

*/Sarah E. Light/*
SARAH E. LIGHT
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2774

OF COUNSEL:

MICHAEL MINTZER
U.S. Environmental Protection Agency
Region 2
290 Broadway, 17th Floor
New York, NY 10007
(212) 637-3168